# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEANETTE S.,[1]<br>             Plaintiff,<br><br>   vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>            Defendant. | No. 2:20-cv-00224-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 16, 18 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 18. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 16, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 7, 2017, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of January 1, 2010. Tr. 347, 517-18, 623-37. The applications were

denied initially and on reconsideration. Tr. 550-56, 558-63. Plaintiff appeared

before an administrative law judge (ALJ) on September 13, 2018. Tr. 470-92. On

November 13, 2018, the ALJ denied Plaintiff's claim. Tr. 344-69.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2015, has not engaged in substantial gainful activity since January 1, 2010. Tr. 350. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar spine degenerative disc disease and scoliosis, obesity (with body mass index of 25-32), and polysubstance use disorder (including opiates, benzodiazepines, and alcohol). *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 352. The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following limitations:

> [Plaintiff] is limited to frequent climbing of ladders/ropes/scaffolds; she is limited to simple, routine tasks with a reasoning level of 2 or less; and she can have only occasional contact with coworkers and supervisors.

Tr. 354.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 361. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper, laundry worker, and industrial cleaner. Tr. 361-62. Alternatively, the ALJ found that even if Plaintiff was further limited to sedentary

ORDER - 7

work with no overhead reaching with the left upper extremity, no more than frequent reaching, handling, and fingering with the left upper extremity, no public contact, and only occasional work changes, she would be able to perform that exists in significant numbers in the national economy, including addresser, final assembler, and microfilm document preparer. Tr. 362. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of January 1, 2010, through the date of the decision. *Id.*

On May 6, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

2.  Whether the ALJ properly assessed Plaintiff's RFC.[2]

ECF No. 16 at 9.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.[3]  ECF No. 16 at 11-13.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or

---

[2] Plaintiff lists two additional issues, arguing the ALJ erred in finding Plaintiff capable of performing medium work, and in finding Plaintiff capable of substantial gainful activity at step five.  ECF No. 16 at 9.  However, Plaintiff only addresses these issues within her argument regarding the ALJ's RFC findings; as such, the Court addresses all three issues within the RFC section.

[3] The Court notes that Plaintiff references evidence that was rejected by the ALJ and the Appeals Council, ECF No. 16 at 6, but Plaintiff does not challenge the rejection of the evidence.  Thus, any challenge is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 355.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 356-57. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ found Plaintiff's physical symptoms were inconsistent with the objective medical evidence. Tr. 356-57. Imaging demonstrated only mild degenerative disc changes/narrowing at L5-S1 in November 2017, and while later imaging showed more severe scoliosis, it still demonstrated no vertebral body compression deformity, no spondylolisthesis, and only mild facet arthropathy. Tr. 356 (citing Tr. 920, 929, 931). The ALJ noted the records contain physical examinations that demonstrate some abnormalities, including antalgic gait and limited range of motion, but further noted Plaintiff generally had normal strength, sensation, reflexes, gait, coordination, no focal deficits, and no atrophy. Tr. 356-57 (citing, .e.g, Tr. 767, 770, 780, 784, 997, 1006). In November 2017, Plaintiff had some abnormalities on examination, including limited range of motion, and a positive straight leg raise, but Plaintiff also had normal strength, muscle tone and bulk, sensation, and reflexes, and the examiner opined there was little objective evidence of limitations. Tr. 356-57 (citing Tr. 925-27).

Plaintiff argues the medical evidence is consistent with her complaints, as the records contain evidence of Plaintiff's neck, beck, and shoulder impairments and obesity. ECF No. 16 at 12. However, the ALJ's interpretation of the evidence is reasonable, thus Plaintiff's alternative interpretation of the evidence does not impact the validity of the ALJ's interpretation. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Plaintiff further argues Dr. Garages' opinion is consistent with Plaintiff's allegations. ECF No. 16 at 12. However, Plaintiff does not challenge the ALJ's rejection of Dr. Garages' opinion, and Dr. Garages' opinion that Plaintiff is capable of light work is not a disabling opinion and thus is not consistent with Plaintiff's allegations. *See* Tr. 927.

Next, the ALJ found Plaintiff's complaints of mental health symptoms were inconsistent with the objective medical evidence. Tr. 357. Plaintiff was generally observed as being alert, oriented, in no acute distress, and having normal thoughts, cognition, memory, concentration, and insight/judgment. *Id.* (citing, e.g., Tr. 824, 827, 836, 845, 848). Plaintiff was noted as having no depression, anxiety, nor agitation on multiple occasions. Tr. 357 (citing Tr. 939, 950, 959). At an August 2017 psychological consultative examination, Plaintiff had normal memory, comprehension, speech, and emotions, and she was pleasant and cooperative. Tr.

353, 357 (citing Tr. 914-18). On this record, the ALJ reasonably concluded that Plaintiff's symptom claims are inconsistent with the objective medical evidence. This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reasons offered, to discount Plaintiff's symptom complaints.

### 2. *Conservative Treatment*

The ALJ found Plaintiff's conservative treatment was inconsistent with Plaintiff's symptom claims. Tr. 354-57. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment)); *see also Tommasetti*, 533 F.3d at 1039 (holding that the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

The ALJ noted that while Plaintiff complained of disabling limitations, she had received generally limited and conservative treatment. Tr. 356. Plaintiff's physical treatment included medication and physical therapy, but no more aggressive treatment for her back impairment. *Id.* Plaintiff's mental health treatment consisted entirely of medication prescribed by her primary care physician; she had not sought counseling despite referrals for counseling. Tr. 357, 867. Plaintiff failed to challenge this reasoning, thus any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2. On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with her conservative and limited treatment. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 3. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with Plaintiff's symptom claims. Tr. 358. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff's reported daily functioning and activities were inconsistent with her allegations of more limiting symptoms. Tr. 358. Plaintiff reported living with a fiancé, managing her own care, hygiene, and medications, preparing meals and performing chores every couple of days, caring for a dog including taking him for a one mile walk daily, grocery shopping, attending appointments, and leaving her home multiple times per day on her own. *Id.* (citing Tr. 483, 694-701, 915). Plaintiff also reported enjoying camping, fishing, watching movies and the news. Tr. 358 (citing Tr. 915). Plaintiff contends the ALJ failed to indicate the frequency Plaintiff engaged in the activities or whether they increased her pain. ECF No. 16 at 12. However, at the hearing, Plaintiff testified she walks her dog for one hour per day, walking for a total of one mile, and testified that walking more than one mile caused fatigue due to being overweight, but testified she did not have increased pain from walking. Tr. 483. The ALJ also cited to evidence in which Plaintiff reported engaging in a variety of activities every week, as discussed *supra.* The totality of Plaintiff's activities is inconsistent with her allegations of disabling limitations. On this record, the ALJ reasonably concluded that Plaintiff's symptom claims are inconsistent with her

activities of daily living. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 4. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about her substance use. Tr. 358. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

The ALJ noted Plaintiff made conflicting statements, and failed to disclose her substance use at some appointments. Tr. 358. At the psychological consultative examination, Plaintiff did not report her recent opioid use. Tr. 357. At her psychological consultative examination, Plaintiff reported her last substance use as 2017 when she was arrested for a DUI, and failed to report her recent substance use. Tr. 915. At her physical consultative examination, Plaintiff reported she did not use alcohol, nor recreational drugs, and did not report any recent substance use. Tr. 923. Plaintiff reported drinking one to two beers daily in December 2017, but a different treatment note from the same month indicated

ORDER - 17

Plaintiff had been heavily drinking and was having withdrawal seizures. Tr. 351 (citing Tr. 1009, 1163, 1187). Plaintiff reported to a provider that she had not been using any opiates prior to a surgery in 2019, despite her medical records indicating she was on a longstanding opiate prescription. Tr. 178. On this record, the ALJ reasonably found Plaintiff made inconsistent statements about her substance use. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 5. Drug-Seeking Behavior

The ALJ found Plaintiff engaged in drug-seeking behavior. Tr. 358. Drug seeking behavior can be a clear and convincing reason to discount a claimant's credibility. *See Edlund*, 253 F.3d at 1157 (holding that evidence of drug seeking behavior undermines a claimant's credibility); *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th Cir. 2010) (evidence of drug-seeking behavior is a valid reason for finding a claimant not credible); *Lewis v. Astrue*, 238 F. App'x 300, 302 (9th Cir. 2007) (inconsistency with the medical evidence and drug-seeking behavior sufficient to discount credibility); *Morton v. Astrue*, 232 F. App'x 718, 719 (9th Cir. 2007) (drug-seeking behavior is a valid reason for questioning a claimant's credibility).

The ALJ noted the medical records contain multiple appointments where Plaintiff repeatedly requested opioid medications. Tr. 358 (citing, e.g., 807, 818-

ORDER - 18

19, 936, 939, 948). Plaintiff reported her medication, including clonazepam and hydrocodone, was stolen on multiple occasions, and asked for early refills from different providers. Tr. 807, 818. Plaintiff's provider noted that his medical center had received a phone call cautioning them about Plaintiff seeking medication from multiple medical offices. Tr. 807. Plaintiff also told Ms. Schorzman a different clinic was requesting that Ms. Schorzman prescribe Plaintiff klonipin and soma; however, when Ms. Schorzman called the clinic, she was informed they did not make the request and were in fact unwilling to prescribe the medications to Plaintiff. Tr. 818. In 2018, Plaintiff overused her hydrocodone and her provider declined to prescribe it to her any longer. Tr. 936. Plaintiff also reported opiate overuse in 2019. Tr. 176. The records note Plaintiff has a history of benzodiazepine withdrawal-related seizures. Tr. 1187. On this record, the ALJ reasonably found Plaintiff engaged in drug-seeking behavior. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 6. *Work History*

The ALJ noted Plaintiff's poor, inconsistent work history prior to her alleged onset date indicates her underemployment is due to something longer standing, rather than her medical conditions. Tr. 358. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a

claimant's testimony that she is unable to work. *Thomas*, 278 F.3d at 959; SSR 96-7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen,* 80 F.3d at 1284; 20 C.F.R. § 404.1529 (work record can be considered in assessing credibility); 20 C.F.R. § 416.929 (same).

The ALJ found Plaintiff had a pattern of low and intermittent earnings even before her alleged onset date. Tr. 358 (citing Tr. 638-42, 646-47, 649-52). Plaintiff's typical annual earnings, even before her alleged onset date, was under $4,000. Tr. 642. Plaintiff alleges her disability began January 10, 2010, however Plaintiff had no earnings in 2008 nor 2009, while she earned over $8,000 in 2011 and had intermittent earnings through 2017. *Id.* Plaintiff's 2010 alleged onset date corresponds to a period when Plaintiff was incarcerated for six months and then released to attend drug treatment, Tr. 626, 915, indicating that Plaintiff's lack of earnings in 2010 was due to her incarceration and not due to her disability. Similarly, Plaintiff contends her work history is consistent with her allegations that she lost jobs due to her impairments and her intermittent work history is consistent with her reported inability to consistently work due to her impairments, ECF No. 16 at 12-13. However, the records demonstrate that many of the gaps in Plaintiff's work history are due to her periods of incarceration. Plaintiff was incarcerated for periods in 2008, 2009, 2010, 2014, and 2016. Tr. 676-77, 915. The ALJ noted that such a work history indicates Plaintiff's lack of work may be due to something

other than her medical conditions, such as a lack of motivation to work. Tr. 358.

At her consultative examination, Plaintiff reported she cannot work in part because

of her "extensive criminal history." Tr. 913. On this record, the ALJ reasonably

found Plaintiff's poor work history was inconsistent with Plaintiff's allegation of

disabling limitations beginning at the alleged onset date. This was a clear and

convincing reason, supported by substantial evidence, to reject Plaintiff's symptom

claims.

## B. Plaintiff's RFC

Plaintiff faults the ALJ for not limiting Plaintiff to "sedentary to light work"

and for not accounting for limitations caused by Plaintiff's mental health

symptoms. ECF No. 16 at 13. At step four of the sequential evaluation, the ALJ

must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating

clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807

F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a claimant adequately

captures restrictions related to concentration, persistence, or pace where the

assessment is consistent with restrictions identified in the medical testimony."

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). To the extent

the evidence could be interpreted differently, it is the role of the ALJ to resolve

conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169

F.3d 595, 599-600 (9th Cir. 1999). Where evidence is subject to more than one

rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at

679; *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings

if they are not supported by substantial evidence).

While Plaintiff contends she should have been limited to "sedentary to light"

work, she does not point to any opinion evidence or objective medical evidence to

support her claim. ECF No. 16 at 13. Plaintiff fails to point to any medical

opinion and the undersigned has identified no medical opinions in the record that

support Plaintiff's argument; Dr. Irwin opined Plaintiff's physical impairments

were non-severe, while Dr. Garges opined Plaintiff is limited to light work, and Dr.

Wolfe opined Plaintiff is limited to medium work. Tr. 358-59, 490, 540, 927.

Further, the ALJ made an alternative step five finding in which he determined that

even if Plaintiff was limited to sedentary work, Plaintiff would still be capable of

performing work that exists in sufficient numbers in the national economy. Tr.

362. As such, any error in failing to limit Plaintiff to light or sedentary work

would be harmless. *See Molina,* 674 F.3d at 1115.

Similarly, Plaintiff contends the ALJ failed to account for her psychological

limitations but does not point to opinion evidence or objective medical evidence to

support her argument. ECF No. 16 at 13-14. Plaintiff argues she should have been

limited to no public contact, no fast-paced work or work that requires production

ORDER - 22

quotas, and there should have been a limitation regarding her difficulty staying on task; Plaintiff argues such failure to include such limitations was harmful error. *Id.* However, the ALJ already limited Plaintiff to simple, routine tasks with a reasoning level of 2 or less and only occasionally contact with coworkers and supervisors. Tr. 354. The ALJ's alternative hypothetical included a limitation to no public contact, and only occasional work changes, and the ALJ found Plaintiff was capable of working even with the additional limitations. Tr. 362. As such, any error in the ALJ failing to include limitations regarding public contact again is harmless. *See Molina,* 674 F.3d at 1115. The vocational expert testified that a limitation to no public contact was only disabling in combination with additional limitations in Plaintiff's ability to reach and/or finger/handle. *Id.* at 13-14 (citing Tr. 490).

Plaintiff argues that she was not capable of reaching in all directions on a frequent basis, but again does not point to any opinion evidence or objective medical evidence to support her argument. ECF No. 16 at 15. There are no medical opinions to support Plaintiff's argument that she is limited to less than frequent reaching; Dr. Irwin opined Plaintiff's physical impairments are non-severe, while Dr. Wolfe and Dr. Garges opined Plaintiff had no manipulative limitations. Tr. 358-59, 490, 540, 927. Plaintiff argues additional medical records that were submitted untimely demonstrated she had an ongoing shoulder

impairment.  ECF No. 16 at 6.  However, as discussed *supra,* Plaintiff did not challenge the ALJ nor Appeals Council's consideration of the additional medical records.

Next, Plaintiff argues the ALJ's incomplete hypothetical led to an error at step five.  ECF No. 16 at 14-15.  However, Plaintiff does not set forth any arguments specific to the ALJ's step five findings, but rather reiterates her earlier arguments.  A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.  *Stubbs–Danielson*, 539 F.3d at 1175-76.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

1    The District Court Executive is directed to file this Order, provide copies to

2    counsel, and **CLOSE THE FILE.**

3         DATED June 23, 2021.

4              *s/Mary K. Dimke*
             MARY K. DIMKE

5         UNITED STATES MAGISTRATE JUDGE

ORDER - 25